UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81309-CV-HURLEY/WHITE

CHRISTOPHER DAVID DITTMER,

    Plaintiff,

v.

RICK BRADSHAW, et al.,

    Defendants.

_____/

**ORDER REJECTING THE REPORT AND RECOMMENDATION OF THE
MAGISTRATE JUDGE, AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

**THIS CAUSE** comes before the Court upon the Report & Recommendation of Magistrate Judge Patrick A. White [ECF No. 132] on Defendants' Motions to Dismiss Plaintiff's Third Amended Complaint [ECF No. 99], filed by Drs. Bodden and Bass[1] [ECF No. 103] and Dr. Delgado [ECF No. 104]. The Court reviews the Report and Recommendation's legal conclusions, as well as those objected to portions, *de novo*. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); *LeCroy v. McNeil*, 397 Fed. App'x 664 (11th Cir. 2010). The Court must be satisfied that there is "no clear error on the face of the record." Fed. R. Civ. P. 72 advisory committee's notes (1983); *Macort v. Prem, Inc.*, 208 Fed. App'x 781, 784 (11th Cir. 2006).

## BACKGROUND

The following allegations are taken as true from Plaintiff's "*pro se*, handwritten" complaint. *See Estelle v. Gamble*, 429 U.S. 97, 99 (1976) ("tak[ing] as true [a prisoner's]

---

[1] Dr. Bass has already been dismissed with prejudice. *See* [ECF No. 125]. Therefore, the Motion to Dismiss as to Dr. Bass will be denied as moot.

handwritten, pro se allegations" on a motion to dismiss a claim for deliberate indifference to a serious medical need):

A little after midnight on July 14, 2010, while a pre-trial detainee at the Palm Beach County Jail, Plaintiff awoke from his bunk bed and struck his head against the ceiling. Plaintiff was immediately taken to the emergency room of the local hospital where he met Dr. Kernus. Dr. Kernus ordered an x-ray, showing some cervical spine degeneration. Dr. Kernus administered Plaintiff ibuprofen, an anti-inflammatory.

Plaintiff met with Dr. Bodden on August 25, 2010. Dr. Bodden, an employee of Armor Correctional Health Services, is an orthopedist who made weekly visits to the Palm Beach County Jail. Plaintiff complained to Dr. Bodden of neck pain and numbness, tingling, and loss of movement in his left arm. After reviewing Plaintiff's emergency room x-ray, Dr. Bodden told Plaintiff "it looks like you have arthritis," potentially aggravated by his accident. Dr. Bodden recommended Plaintiff have an MRI upon release to determine the extent of the injury. Dr. Bodden explained that the jail was "cheap" and probably would not approve one during his stay. Dr. Bodden then instructed Plaintiff to refrain from strenuous activity, to continue to take his anti-inflammatories, and to consult a specialist for an MRI upon his release. Dr. Bodden inquired when Plaintiff would be released. Plaintiff responded that he did not know.

Sometime the next month, September 2010, Plaintiff was transferred to the Martin Correctional Institution, a prison. During his imprisonment, Plaintiff met with Dr. Mary Chryssiadis, an employee of Wexford Health Services, Inc. and the Chief Health Officer of the prison. Her employer, Wexford Health, had contracted with the prison to provide health care to inmates. Dr. Chryssiadis ordered Plaintiff an MRI, which was taken on January 30, 2013.

On February 18, 2013 Plaintiff met with Dr. Delgado, who worked at the prison or for Wexford Health. Dr. Delgado reviewed Plaintiff's MRI and diagnosed him with a herniated disc. According to Dr. Delgado, the herniation likely caused Plaintiff's continued symptoms, and lack of treatment likely aggravated the herniation. Dr. Delgado said surgery may be necessary, and signed a form referring Plaintiff to an orthopedist.

Plaintiff met with Dr. Delgado again on April 2, 2013. Dr. Delgado told Plaintiff he had not yet submitted Plaintiff's referral form. The reason for not submitting the form was to provide Wexford Health "more time to settle in" to its new position as the prison's healthcare provider. According to Plaintiff, Dr. Delgado notated the form with the phrase "holding pending Wexford." Plaintiff complained to Dr. Delgado of continued pain. Dr. Delgado explained that Wexford Health would not allow Plaintiff a pain reliever stronger than Plaintiff's present ibuprofen. According to Plaintiff, however, other inmates did, in fact, have stronger pain relievers. Dr. Delgado administered Plaintiff a steroid shot and sinus pill, both of which Plaintiff claims were inadequate. Dr. Delgado also explained to Plaintiff that Wexford Health avoids treating inmates to save costs. Because some treatments require long periods of time, by delaying such treatments like surgery until close to a prisoner's release date, Wexford Health has an excuse to avoid treatment altogether.

Plaintiff was released without seeing an orthopedist. He suffered pain throughout his imprisonment. He has lost bone and cartilage. He suffers from weakness, spasms, pain, numbness, and tingling in his left arm. He has lost use of his left thumb and forefinger. This loss may be permanent. Plaintiff's current physician blames Plaintiff's present condition on his lack of treatment.

## PROCEDURAL HISTORY

On December 5, 2012, Plaintiff filed a complaint against various medical and correctional personnel, claiming they showed deliberate indifference to his serious medical needs in violation of 28 U.S.C. § 1983 [ECF No. 1]. Judge White screened the complaint pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B)(ii), and entered a report recommending the complaint be dismissed without prejudice [ECF No. 9], which the Court adopted [ECF No. 19]. Plaintiff then filed an Amended Complaint [ECF Nos. 23–24], superseded by a Second Amended Complaint [ECF No. 41]. Judge White entered another report screening the Second Amended Complaint, recommending that the Court strike the previous complaints and that Plaintiff's Second Amended Complaint continue against seven defendants, three of whom were Drs. Bodden, Delgado, and Kernus [ECF No. 32]. Judge White concluded that Plaintiff had stated a claim against Drs. Bodden, Delgado, and Kernus sufficient to pass the screening. The Court adopted Judge White's report on August 9, 2013 [ECF No. 42].

Dr. Kernus then filed a motion to dismiss Plaintiff's Second Amended Complaint [ECF No. 60]. Judge White reviewed Dr. Kernus' motion to dismiss and entered a report recommending the Court deny it [ECF No. 73]. The Court rejected the report's recommendation in part, and granted Dr. Kernus' motion to dismiss [ECF No. 84].

On April 29, 2014, Plaintiff filed his Third Amended Complaint [ECF No. 99]. The Third Amended Complaint generally repeated Plaintiff's previous allegations but sought to add two previously unnamed defendants, Wexford Health and Dr. Chryssiadis. On May 12, 2014, Dr. Bodden moved to dismiss Plaintiff's Third Amended Complaint [ECF No. 103]. The next day, Dr. Deglado also moved to dismiss Plaintiff's Third Amended Complaint [ECF No. 104].

Judge White screened Plaintiff's Third Amended Complaint [ECF No. 119], and entered a report recommending that the Court dismiss the claims against the previously unnamed defendants, Wexford Health and Dr. Chryssiadis. The report stated that Plaintiff's claims against Drs. Delgado and Bodden "remain[ed] the same in the third amended complaint as in the earlier filed complaints." Because the Court had previously adopted a report recommending that Plaintiff's earlier allegations against Drs. Delgado and Bodden had stated a claim sufficient to pass a screening, [*see* ECF No. 42], Judge White recommended that the newly filed claims against Drs. Bodden and Delgado "remain pending." The Court adopted the report on August 21, 2014 [ECF No. 124].

Judge White has now entered his present Report and Recommendation (the "Report") on Dr. Bodden and Dr. Delgado's Motion to Dismiss [ECF No. 132]. The Report recommends that the Court deny their motions, reasoning that "[i]t has already been determined by [this Court] upon adoption of the Report and Recommendation [[ECF 124]] that the plaintiff has stated a claim for denial of medical treatment" in his Third Amended Complaint against Drs. Bodden and Delgado. [ECF No. 132 at 12]. The Report also reasons that "the facts have not been sufficiently developed" to determine if qualified immunity applies to Dr. Delgado, the only defendant to have argued for it in his motion to dismiss. *Id.* at 13.

## OBJECTIONS

Dr. Bodden objects to the Report, specifically to its reasoning. Dr. Bodden argues that, contrary to the Report, it has not been determined by this Court that Plaintiff has stated a claim against Drs. Bodden and Delgado. Furthermore, Dr. Bodden argues, even if the Court had determined that Plaintiff had stated a claim against Drs. Bodden and Delgado, that determination

5

does not render a motion to dismiss moot. Dr. Bodden explains that the Court allowed Dr. Kernus to successfully file a motion to dismiss even after it adopted a report recommending that Plaintiff's claims against Dr. Kernus against him passed a PLRA screening. Plaintiff has responded to Defendant's objections.

Upon *de novo* review, the Court sustains Dr. Bodden's objections. Dr. Bodden is correct that this Court has not ruled that Plaintiff's Third Amended Complaint states a claim against either Dr. Bodden or Delgado. The Report on Plaintiff's Third Amended Complaint screened the claims against the previously unnamed defendants, Dr. Chryssiadis and Wexford Health, and not the current defendants, Drs. Bodden and Delgado. Dr. Bodden is also correct that passing a screening does not render a motion to dismiss moot. As explained further below, the Court may make an independent ruling on a pending motion to dismiss, as it did with Dr. Kernus, even after a plaintiff's claims have survived a PLRA screening. Although the Court concludes that Plaintiff has made a prima facie case for deliberate indifference, it finds that both Defendants are entitled to the defense of qualified immunity. Accordingly, Plaintiff's Third Amended Complaint will be dismissed.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

6

*v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although liberally construed, *pro se* complaints must meet these same pleading requirements. *See Berkery v. Kaplan*, 618 Fed. App'x 813, 813 (11th Cir. 2013).

## DISCUSSION

### A. MOTION TO DISMISS AFTER PLRA SCREENING

Under the Prisoner Litigation Reform Act of 1995 (PLRA), a district court "shall dismiss" a complaint filed *in forma pauperis* "any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The same standard applies to a dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) as to a dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). Nevertheless, while the same standard applies, a complaint that passes a screening does not necessarily pass a motion to dismiss, and passing a screening does not render a motion to dismiss moot. Instead, "the sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007); *see Paladino v. Newsome*, No. CIV. 12-2021, 2013 WL 3270987, at *4 (D.N.J. June 27, 2013); *Amor v. Arizona*, No. CIV 06-499-TUC-CKJ, 2009 WL 529326, at *25 n.18 (D. Ariz. Feb. 27, 2009).

This result obtains for various reasons. Most importantly, to conclude that a PLRA screening and a Rule 12 motion to dismiss are substitutive, not cumulative, removes the procedural protections of Rule 12 from defendants who happen to be sued by prisoners proceeding *in forma pauperis*. *See e.g., Teahan*, 481 F. Supp. 2d at 1120. These defendants

would be disadvantaged because "[a]t the time of the initial screening, the complaint was liberally construed without the benefit of briefing from [the] [d]efendants." *Id.* Furthermore, "basic fairness weighs in favor of allowing Defendants to have their motion decided on the merits." *Id.* Accordingly, the Court will review *de novo* the conclusion as to whether Plaintiff has failed to state a claim upon which relief can be granted.

### B. DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED

Deliberate indifference to a serious medical need violates a prisoner's or a pretrial detainee's rights under the Cruel and Unusual Punishment clause of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment, respectively. *Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013). In either case, "[t]o prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *Carter v. Broward Cnty. Sheriff's Dep't Med. Dep't*, 558 F. App'x 919, 922 (11th Cir. 2014) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009)).

Element (1), a serious medical need, is an "objective" one. A must plaintiff show an "objectively serious medical need . . . that, if left unattended, poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotations marks and citations omitted). A medical need is objectively serious when it has either "been diagnosed by a physician as mandating treatment" or is "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

Element (2), deliberate indifference, is a "subjective" one. A plaintiff must show a defendant had a "subjective intent to punish." *Taylor*, 221 F.3d at 1258. A defendant has a subjective intent to punish when he knows of, but deliberately disregards, the risk of serious harm to the plaintiff. *See Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) ("To establish the second element, deliberate indifference to the serious medical need, the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence."). Deliberate disregard includes "a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McEligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).

Element (3), causation, requires the plaintiff to show that "the delay attributable to the defendant's indifference likely caused the plaintiff's injury." *McDaniels v. Lee*, 405 Fed. App'x 456, 458 (11th Cir. 2010) (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007)). Whether or not a plaintiff satisfies element (2), deliberate indifference, "overlaps with the causation inquiry." *Goebert*, 510 F.3d at 1329. "The question is whether that delay worsened [the plaintiff's] condition." *Id.*

### 1. DR. BODDEN

Plaintiff met with Dr. Bodden on August 25, 2010, who, after reviewing Plaintiff's x-ray, told him that that he may have arthritis. Certain types of arthritis, such as osteo– and rheumatoid arthritis, are a serious medical need. *See Wright v. Antonini*, 41 Fed. App'x 824 (6th Cir. 2002) (holding that the prison adequately treated the plaintiff's osteoarthritis); *Norfleet v. Webster*, 439 F.3d 392, 395 (7th Cir. 2006) ("There is no dispute that [rheumatoid arthritis] qualifies as a 'serious medical need'"); *Zackery v. Mesrobian*, 299 Fed. App'x 598 (7th Cir. 2008) (holding

9

that the prison adequately treated the plaintiff's osteoarthritis); *but see Smith v. DeBruyn*, 91 F.3d 146, at *3 (7th Cir. 1996) ("Although arthritis may be very painful, Smith's arthritis did not constitute a serious medical need under the Eighth Amendment."). The Eleventh Circuit has assumed, without deciding, that arthritis in general may be a serious medical need. *See Leonard v. Dep't of Corr. Fla.*, 232 Fed. App'x 892, 894 n.3 (11th Cir. 2007) ("Taking Plaintiffs' allegations as true, we assume he has shown an objectively serious medical need that [arthritis]—without treatment—poses a substantial risk of serious harm."). The Court, consistent with the greater weight of authority, finds that Plaintiff's arthritis, even absent a herniated disc, is an allegation of a serious medical need.

To determine the extent of Plaintiff's injury, Dr. Bodden recommended that Plaintiff have an MRI. Dr. Bodden chose not to order this MRI during Plaintiff's stay, explaining that the jail was "cheap" and would not approve one. Dr. Bodden did not submit an MRI request to the jail for it to deny; instead, he chose not to order the MRI at all. Dr. Bodden knew of the risk of serious harm to Plaintiff, for he recommended that Plaintiff have an MRI. Yet he disregarded that risk, more than negligently, by choosing not to effectuate his recommendation. Such "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference." *E.g., Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989).

Dr. Bodden defends this choice, arguing that an MRI was not medically indicated. *See* Bodden's Mot. to Dismiss at 3, ¶ 7 (arguing that Dr. Bodden "exercised medical judgment and determined that an MRI was not indicated"). Although that may be true in fact, on a motion to dismiss the Court must take the facts to be true as alleged. From Plaintiff's allegations, Dr. Bodden's explanation shows he made a political decision not to order an MRI, not a medical one.

10

There is, of course, no question that declining to order an MRI is not always a constitutional violation: "A *medical* decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (emphasis added). This is so because "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Id*.; *See McCall v. Cook*, 495 Fed. App'x 29, 31 (11th Cir. 2012) ("Dr. Barlow's decision to order no x-ray or other diagnostic imaging was a *medical* judgment that does not amount to deliberate indifference.") (emphasis added). However, from the allegations of Plaintiff's complaint, Dr. Bodden did not make such a *medical* judgment. Plaintiff alleges that this lack of diagnosis, and the treatment that would have followed, caused him his past and present injuries. Accordingly, Plaintiff has stated a prima facie case for deliberate indifference to a serious medical need against Dr. Bodden.

### 2. DR. DELGADO

Plaintiff twice met with Dr. Delgado who, after reviewing Plaintiff's MRI, diagnosed him with a herniated disc. Plaintiff also complained to Dr. Delgado of continued pain. This Court has already found that a herniated disc may be an allegation of a serious medical need. [*see* ECF No. 84 at 4]. So too may be Plaintiff's continued pain. *See e.g., Perez v. Anderson*, 350 Fed. App'x 959, 962 (5th Cir. 2009) (holding that "persistent pain" constituted a serious medical need); *Purkey v. Green*, 28 Fed. App'x 736, 743 (10th Cir. 2001) (holding that "suffer[ing] persistent pain" from a "'pinched nerve' neck injury" is an objectively serious medical need); *Tsosie v. Dunbar*, No. CV–10–2104, 2012 WL 1191642, *8 (M.D. Pa. Apr. 10, 2012) ("Persistent severe pain qualifies as a serious medical need").

Dr. Delgado recommended Plaintiff see an orthopedist, for Plaintiff may have required surgery. Dr. Delgado, however, did not refer Plaintiff to a specialist, so to allow Wexford Health "more time to settle in." In failing to refer Plaintiff to a specialist, a referral he himself recommended, Dr. Delgado made a decision of convenience, not a medical judgment. "[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out." *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). Dr. Delgado also knew of Plaintiff's continued pain but denied him more powerful pain relievers, explaining that Wexford Health would not permit them. Dr. Delgado, of course, cannot be faulted for complying with a legitimate policy such as denying certain medications to prisoners. *See e.g., Lowe v. Kaplan*, 308 Fed. App'x 993, 996 (7th Cir. 2009) (affirming summary judgment in favor of a nurse on a claim for deliberate indifference when she complied "with legitimate prison policies."). But Plaintiff alleges that Dr. Delgado's deference to a nonexistent policy was pretext, as other prisoners possessed more powerful pain relievers. Again, Plaintiff alleges that this lack of medication, as well as his lack of referral and the treatment that would have followed, caused him his past and present injuries. Accordingly, Plaintiff has stated a prima facie case for deliberate indifference to a serious medical need against Dr. Delgado.

### C. QUALIFIED IMMUNITY

Judge White recommends that the Court deny Defendants' qualified immunity defense, as "the facts have not been sufficiently developed at this time to make this determination."

Report at 13. The Court will not adopt this recommendation. Upon *de novo* review, the Court finds that both Defendants are entitled to the qualified immunity defense.[2]

1. **CLEARLY ESTABLISHED RIGHT**

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "To receive qualified immunity, the government

---

[2] Although only Dr. Delgado, but not Dr. Bodden, argues for qualified immunity in his motion to dismiss, both Defendants may be protected by it. Plaintiff was on notice that Dr. Bodden would invoke the qualified immunity defense, as Dr. Bodden had asserted it as his Tenth Affirmative Defense in his Answer to Plaintiff's Second Amended Complaint. *See* [ECF No. 57] ("Tenth Affirmative Defense: Defendant BODDEN is entitled to immunity, qualified immunity and/or sovereign immunity from suit."). Because Plaintiff had notice of the defense, the Court may *sua sponte* apply qualified immunity to Dr. Bodden. *See Lillo ex rel. Estate of Lillo v. Bruhn*, 413 Fed. App'x 161, 162 (11th Cir. 2011) ("[T]here was no error on the part of the district court when it *sua sponte* raised the issue of qualified immunity for the firefighters. The district court put Lillo on notice that he had to come forward with evidence regarding the firefighters. It was within the district court's authority to subsequently determine that the firefighters were entitled to qualified immunity as a matter of law."). In fact, the PLRA mandates the Court do so. *See* 28 U.S.C. § 1915(e)(2) ("the court *shall dismiss the case at any time* if the court determines that . . . the action . . . seeks monetary relief against a defendant who is immune from such relief.") (emphasis added). Because Plaintiff had notice, Plaintiff was given the required "opportunity to respond" to Dr. Bodden's qualified immunity defense when Plaintiff prepared his Third Amended Complaint. *Cf. Manzini v. The Fla. Bar*, 511 Fed. App'x 978, 983 (11th Cir. 2013) (holding that a plaintiff "had the opportunity to respond" to a qualified immunity argument raised for the first time in a reply memorandum to a motion to dismiss by objecting to the magistrate judge's report and recommendation on that motion). Finally, the policy of qualified immunity favors the Court's analysis and application of it to both Defendants, even if Dr. Bodden did not specifically argue for it in his motion to dismiss. The purpose of qualified immunity is to protect "a right to be free from the burdens of litigation [which] suggests that it should be decided at an early stage," *Bouchard v. Transp. Co. v. Fla. Dept. of Envtl. Prot.*, 91 F.3d 1445, 1448 (11th Cir. 1996), and "[t]his purpose is not served when a ruling on [qualified] immunity is unnecessarily postponed." *Id.* at 1448–49. Accordingly, the Court may *sua sponte* apply the qualified immunity defense to Dr. Bodden.

official must first prove that he was acting within his discretionary authority." *Id.* Here, there is no dispute that Plaintiff alleges Drs. Bodden and Delgado were acting within their discretionary authority in providing medical care to a prisoner. The burden then shifts to Plaintiff, who must "show that the defendants are not entitled to qualified immunity." *Id.* To meet this burden, Plaintiff must prove both that "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* at 1099 (internal quotation marks and citation omitted). Because the Court has already found (1) that Plaintiff has stated a claim that Drs. Bodden and Delgado violated Plaintiff's constitutional right, Plaintiff must now show (2) that this right "was clearly established at the time of the alleged violation." *Id.* This, Plaintiff cannot do.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Davila v. Gladden*, No. 13-10739, 2015 WL 127364, at *9, ---F.3d---- (11th Cir. Jan. 9, 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)) (internal citation marks omitted). "A right may be clearly established for qualified immunity purposes in one of three ways:"

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009). Relevant case law includes only "binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

At the time of Defendants' alleged violations, it was clearly established that a non-medical decision to delay treatments, including diagnostic tests, would be unconstitutional. *See e.g., Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003) ("[A] defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference."); *Harris v. Coweta Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994) ("[T]he right to medical care may include diagnostic tests known to be necessary, not just medicinal and surgical care."). That right, however, was not absolute. Instead, the constitution permitted delays in treatment "depend[ing] on the nature of the need and the reason for the delay." *See Harris v. Coweta Cnty.*, 21 F.3d 388, 393-94 (11th Cir. 1994). Accordingly, a "general statement of law ordinarily does not preclude qualified immunity in cases involving a delay in medical treatment for a serious injury." *Bozeman v. Orum*, 422 F.3d 1265, 1274 (11th Cir. 2005). Rather, the application of qualified immunity is "highly fact-specific." *Id.* To engage in this highly fact-specific inquiry, courts reduce the alleged violation to a statement of material facts, and then compare it to binding precedent. *See e.g., Edwards v. Shanley*, 666 F.3d 1289, 1296 (11th Cir. 2012) (determining whether it was clearly established "that ordering a five-to seven-minute dog attack against a compliant suspect who is pleading violate[d] the" constitution"); *Hazleton v. Trinidad*, 488 Fed. App'x 349, 352-53 (11th Cir. 2012) (inquiring whether it was clearly established whether "entry into a suspected misdemeanant's home to effect her warrantless arrest, when the officers first pause their pursuit for several minutes," violated the constitution).

2. **DRS. BODDEN AND DELGADO**

Applying these principles here, the Court must determine—as to Dr. Bodden—whether it was clearly established that a doctor violates the constitution when he, believing the jail would

15

not approve it, delays ordering diagnostic imaging for an inmate with neck pain but instead instructs the inmate to continue his treatment. As to Dr. Delgado, the Court must determine whether it was clearly established that a doctor violates the constitution when he, to accommodate his supervisory agency, delays for six weeks referring an inmate with a diagnosed herniated disc to a specialist, or when he, to comply with what he believes are prison policies, refuses to provide that inmate stronger pain relievers. Upon thorough review, the Court cannot find—and Plaintiff has not cited—any binding precedent that clearly establishes this or materially similar conduct violated Plaintiff's constitutional rights.

Non-medical decisions to delay treatment are not per se illegal. Medical personnel, such as Drs. Bodden and Delgado, are permitted within the boundaries of qualified immunity to delay treatment for reasons such as accommodating the needs of law enforcement. For example, at the time of Plaintiff's alleged injuries, the Eleventh Circuit had held qualified immunity protected a paramedic's non-medical decision to dress a detainee's dog-bite wound and release him to the police for booking instead of taking the detainee to the hospital for stiches. *See Andujar v. Rodriguez*, 486 F.3d 1199 (11th Cir. 2007). The paramedics "assumed" the police would bring the detainee to the hospital, but did not know whether they would, or how long that delay would be. *Id.* at 1203. The Court of Appeals reversed the District Court's denial of qualified immunity, reasoning that it could find no "factually similar caselaw" that would preclude defendants from invoking it. *Id.* at 1205. "Moreover," the court reasoned, "while there was caselaw establishing that whoever "intentionally delays providing medical care . . . acts with deliberate indifference," the court could not "say that [that] general rule applied with obvious clarity to the specific conduct in question." *Id.* (internal quotation marks and citations omitted).

The inquiry the Court must make is not whether Defendants' conduct should not be protected by qualified immunity, but whether it is not. Here, Plaintiff has not made this showing. The law was not clearly established that Dr. Bodden's decision not to order Plaintiff an MRI, when Dr. Bodden believed it would not be approved, would have violated Plaintiff's constitutional rights. Nor was the law clearly established that Dr. Delgado's decision to delay referring Plaintiff to a specialist, so to accommodate his supervisory agency, or to deny Plaintiff stronger pain relievers, so to comply with what he believed were prison policies, would have violated Plaintiff's constitutional rights.

Although the Court has found that Plaintiff has stated a prima facie case of deliberate indifference, the law no longer allows such a finding to preclude the application of qualified immunity. *Compare id.* (holding that the defendants "would be entitled to qualified immunity . . . even if their conduct were found constitutionally impermissible") *with Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994) ("A finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who deliberately ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law."); *see Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014 (11th Cir. 2001) (en banc) ("reject[ing] that dicta [from *Hill*] because it incorrectly jumbles the merits of an Eighth Amendment violation with the separate concept of an immunity defense."). Because it was not clearly established at the time of the alleged violations that Defendants' conduct would violate Plaintiff's constitutional rights, Defendants are entitled to the defense of qualified immunity. Accordingly, granting Plaintiff leave to amend would be futile. *See e.g., Hardy v. Broward Cnty. Sheriff's Office*, 238 Fed. App'x 435, 444 (11th Cir. 2007) (holding that leave to

Case 9:12-cv-81309-DTKH   Document 139   Entered on FLSD Docket 02/04/2015   Page 18 of 18
Order on R&R on Defendants' Motions to Dismiss Plaintiff's 3d Am. Comp.
*Dittmer v. Bradshaw, et al.*, No. 12-81309-CV-Hurley/Hopkins

amend would have been futile when the plaintiffs failed to show that the defendants were not entitled to qualified immunity); *Manzini v. The Fla. Bar*, 511 Fed. App'x 978, 983 (11th Cir. 2013) (same).

## CONCLUSION

Upon *de novo* review of the Report's legal conclusions as well as those objected to portions, it is hereby

**ORDERED** and **ADJUDGED** that:

1. The Report & Recommendation of Magistrate Judge Patrick A. White [ECF No. 132] is **REJECTED**.

2. Defendant Dr. Bodden's and Dr. Bass's Motion to Dismiss Plaintiff's Third Amended Complaint [ECF No. 103] is **GRANTED** as to Dr. Bodden and **DENIED AS MOOT** as to Dr. Bass.

3. Defendant Dr. Delgado's Motion to Dismiss Plaintiff's Third Amended Complaint [ECF No. 104] is **GRANTED**.

4. Plaintiff's Third Amended Complaint is **DISMISSED WITH PREJUDICE**.

5. All pending motions not otherwise ruled upon are **DENIED AS MOOT**.

6. This case is **CLOSED**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 4th day of February, 2015.

                                                          Daniel T. K. Hurley
                                                         United States District Judge

*Copies provided to counsel of record*